UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MARTIN ANTHONY PASSLEY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:18-cv-00155-SNLJ |
| MISSOURI DEPARTMENT OF SOCIAL SERVICES, FAMILY SUPPORT DIVISION, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant's motion to dismiss the first amended complaint against it (#26). Also pending is defendant's motion to dismiss the original complaint (#11), plaintiff's motion to vacate this Court's order granting defendant leave to file a response to plaintiff's original complaint out of time (#13), plaintiff's motion for default judgment (#14), which appears predicated on the motion to vacate being granted, a motion to strike by defendant targeting plaintiff's sur-reply to the motion to dismiss (#33), and, finally, plaintiff's motion for leave to file the sur-reply that is subject to the motion to strike (#35).

The motion to dismiss the original complaint (#11), motion to vacate (#13), and motion for default judgment (#14) are **DENIED AS MOOT** pursuant to the Eighth Circuit's recognition that an amended complaint nullifies the original complaint. *See Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014).

1

Because all three motions were predicated on a now-nullified pleading, they are likewise null themselves.

The motion to strike (#33) is **GRANTED** and plaintiff's sur-reply (#32) is hereby **STRICKEN**. Plaintiff's motion for leave (#35), coming only after a sur-reply was inappropriately filed without leave under Local Rule 7-4.01(C), is **DENIED**. Pro se litigants are expected to understand local rules and this Court will not grant a special privilege to ignore them or, else, ask forgiveness after-the-fact. *See Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1067 (8th Cir. 2017).

The motion to dismiss (#26) the first amended complaint is **GRANTED IN PART and DENIED IN PART** for the reasons set forth below.

**I. BACKGROUND**

Plaintiff, Martin Anthony Passley, proceeds *pro se* against defendant Missouri Department of Social Services on the basis of several claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* In his first amended complaint, plaintiff alleged defendant denied him employment after learning of plaintiff's criminal conviction record. Plaintiff explains:

> Defendant offered the Plaintiff employment by phone [on] July 27, 2017[,] pending results of a criminal background check … Defendant contacted Plaintiff on August 7, 2017, and notified him via email and an attached letter dated August 7, 2017, of its intention to withdraw the offer of employment, citing convictions reported in Plaintiff[']s criminal history record.

(Doc. #25, pp. 2-3). According to plaintiff, defendant wrongfully discriminated against him due to a disability (bi-polar disorder) because "each incident listed in the

criminal history record was a direct result, or caused by the opportunistic exploitation, of the untreated symptomology's (sic) and/or effective treatment of my disability." In other words, plaintiff states his mental disability should excuse his criminal convictions, and that defendant should not be permitted to rely on them, because "employers … should not use a policy or practice that excludes people with certain criminal records if the policy or practice significantly disadvantages individuals [with[ protected characteristic[s] … such as bi-polar manic depression[.]" The complaint makes clear plaintiff only mentioned his alleged disability, and its alleged connection to his criminal history, after being denied employment.

The complaint does not clearly list specific counts against defendant. However, it appears plaintiff moves under two theories: failure to accommodate and retaliation. The failure to accommodate claim is a variant of a failure to hire claim, which alleges in essence that defendant, in making a hiring decision, should have permitted plaintiff an accommodation to explain why he was not a "direct threat" to defendant's customers and employees despite having a criminal record. Plaintiff cites 29 C.F.R. § 1630(2)(r) in support, which defines "direct threat" in relation to an employer's lawful decision to impose certain job qualifications in order to protect the public from direct threats to health or safety under 29 C.F.R. 16.3015(b)(2), *see also* 42 U.S.C. §§ 12113(a), (b).[1]

---

[1] As indicated, Section 12113 details defenses that employers might rely on when, for example, denying an applicant who poses a "direct threat" to the public or the workplace should they be hired. Giving plaintiff the benefit-of-the-doubt in recognition of his *pro se* status, the Court presumes plaintiff is actually attempting to rely on Section 12112, which protects employee and job applicants from disability-based discrimination. See 42 U.S.C. §§ 12112(a), (b).

Plaintiff's retaliation claim, meanwhile, is predicated on the fact that, "after exhausting all interagency complaint venues" related to his employment efforts, defendant purportedly began harassing him as a client. Plaintiff states that defendant "began to systematically harassment (sic) Plaintiff via preemptive and repeated investigations and reviews ... demanding duplicate verifications in concert with improper use of child support enforcement authority to preemptively garnish Plaintiff's poverty level income." Plaintiff further states that his food stamp and healthcare benefits were "inappropriately cancelled twice," which he suggests was because of defendant's retaliatory animus.

## II. ANALYSIS

### 1. Plaintiff's Failure to Hire / Failure to Accommodate Claim

Defendant moves to dismiss plaintiff's failure to hire / failure to accommodate claim on the basis that it has the right to choose not to hire someone with a criminal record. Defendant goes on to explain that, to the extent plaintiff suggests a causal link between his disability and his criminal convictions, any decision to refuse employment was not *because of* plaintiff's disability but merely a *consequence* of it. This Court agrees.

This is not a situation in which plaintiff is arguing his convictions themselves are a disability. That argument has been squarely rejected by courts that have considered it. *See, e.g., West v. Prudential Ins. Co. of America*, 462 Fed.Appx. 170 (3d Cir. 2011). Instead, plaintiff takes the somewhat novel approach of arguing it is his disability that caused his convictions and, therefore, defendant was required to undertake a concerted

effort—i.e. provide an accommodation—to determine whether plaintiff was truly a threat and whether his convictions should be excused under defendant's hiring policies. To substantiate that theory, plaintiff must nonetheless demonstrate three *prima facie* elements: (1) that he is disabled within the meaning of the ADA; (2) that he is a qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3) that he suffered an adverse employment action *because of* his disability—to mean an intentional discrimination by the employer. *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370 (8th Cir. 2018); 42 U.S.C. § 12112(a)-(b); *see also Lipp v. Cargill Meat Solutions Corp.*, 911 F.3d 537, 543 (8th Cir. 2018) (explaining the ADA prohibits discrimination "against a qualified individual because of his or her disability," which means an "intentional discrimination").

In arguing the third element cannot be met, defendant directs this Court's attention to *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194 (7th Cir. 1997). In that case, Judge Posner wrote—in the context of firing an employee—about the meaningful distinction between taking an employment-related action *because of* a disability and taking an employment-related action *as a consequence of* a disability:

> Even if the individual is qualified, if his employer fires him for any reason other than that he is disabled there is no discrimination because of the disability. This is true even if the reason is the consequence of the disability, as is implicit in the decisions cited earlier concerning the blind, alcoholic, or insulin-dependent worker. The employer who fires a worker because the worker is a diabetic violates the Act; but if he fires him because he is unable to do his job, there is no violation, even though the diabetes is the cause of the worker's inability to do his job.

*Id*. at 1196. Posner goes on,

> [A]s [plaintiff] Matthews argues [here], if he hadn't been disabled from working full-time as a result of his heart attack … he would not have gotten a low rating for 1991 or worked in a part-time nonsupervisory job in 1992. As a result, he probably would not have been laid off. But there is no evidence that the company laid him off because he was disabled, rather than because of the stated reasons that he had contributed little in 1991 and was working only part-time in 1992 … His case is that he was discharged because of his disability, and that the employer has failed to justify the discrimination. He fails at the first step. He was not discharged because of his disability. He was discharged because of a consequence of the disability—his absence from work the last half of 1991 and his not working full-time the following year.

*Id*. at 1197-1198. The Eighth Circuit—citing *Matthews*—has embraced the Seventh Circuit's "because of" / "consequence of" distinction, explaining that "firing an employee because of the job performance consequences of a disability such as [multiple sclerosis], rather than the disability itself, is not actionable under the ADA." *Mole v. Buckhorn Rubber Prods., Inc*., 165 F.3d 1212, 1219 n.3 (8th Cir. 1999). In the same vein, the Eighth Circuit has also held disabled persons to the same law-abiding standards as other employees, concluding it is not discriminatory for an employer to refuse to hire a person based on a shoplifting conviction that was purportedly caused by a mental disability. *See Harris v. Polk Cnty., Iowa*, 103 F.3d 696, 697 (8th Cir. 1996).

*Matthew*, *Mole*, and *Harris* resolve plaintiff's failure to hire / failure to accommodate claim. Plaintiff cannot shrug off his criminal record as a symptom of his mental disability, that effort was squarely rejected in *Harris,* 103 F.3d at 697 ("Harris argues the ADA prohibits the county attorney from using her criminal record to reject her application because her shoplifting was caused by a mental illness ... Contrary to Harris's view, the ADA does not require employers to overlook infractions of the law." (internal

quotations omitted)). Meanwhile, the underlying truth—as pointed out in *Matthew* and *Mole*— is that defendant decided against hiring plaintiff not because he suffers a mental disability, but because his mental disability *produced a consequence* that makes him incompatible with defendant's hiring policies. Again, the record makes clear that defendant chose not to hire plaintiff immediately following the conclusion of a criminal background check; it was only after this decision that plaintiff brought to light his alleged mental disability as a sort of excuse—one that did not sway defendant. Ergo, it simply cannot be said that defendant refused to hire plaintiff "because of" a disability. *See Matthews*, 128 F.3d at 1196-1198; *Mole*, 165 F.3d at 1219 n.3. Plaintiff's failure to hire / failure to accommodate claim will be dismissed.

## 2. Plaintiff's Retaliation Claim

In establishing a retaliation claim under the ADA, plaintiff is, again, required to initially establish three *prima facie* elements: (1) that he engaged in statutorily protected activity; (2) that defendant took an adverse action against him; and (3) that there existed a causal connection between the adverse action and the protected activity. *Hustvet v. Allina Health Sys.,* 910 F.3d 399, 412 (8th Cir. 2018); *see also* 42 U.S.C. § 12203(a). Plaintiff's retaliation claim is based on the fact that defendant purportedly withdrew certain welfare benefits and began improperly garnishing plaintiff's wages (for child support) after he filed a complaint with the Missouri Commission on Human Rights and the Equal Opportunity Employment Commission. Defendant argues plaintiff is incapable of satisfying the second element because the parties were never engaged in an employment relationship with each other and because the alleged adverse action did not pertain to the

7

"terms, conditions, and privileges of employment." In support of this purported need for an employment-centric adverse action, defendant cites *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911 (8th Cir. 2018), *Sellers v. Deere & Co.*, 791 F.3d 938, 942 (8th Cir. 2015), and *Hill v. Walker*, 737 F.3d 1209 (8th Cir. 2013).

*Moses*, *Sellers*, and *Hill* are inapposite—unlike this case, which involves a job applicant, all three of those cases pertained to claims by an employee against their employer. Thus, it is not surprising to find that those cases expressly mention the need for an "adverse *employment* action." *Moses*, 894 F.3d at 924; *Sellers*, 791 F.3d at 942; *Hill*, 737 F.3d at 1216 (emphasis added). But, that phrase has historically been fraught with nuance; so much so, in fact, that the U.S. Supreme Court undertook to clarify its meaning in *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). In *Burlington*—a case involving Title VII—the Supreme Court noted a wide divergence in definitions between the various circuits and went on to hold that a retaliation claim need not be based on employment-related or workplace-related adverse conduct. *Id*. at 67 ("The scope of the antiretaliation provision [of Title VII] extends beyond workplace-related or employment-related retaliatory acts and harms."). Indeed, "the antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." *Id*. at 57. Instead, it was held that the new, uniform standard to be applied is whether "[the] employer action[']s"—taken in whatever context, work-related or not—"would have been materially adverse to a reasonable employee or applicant." *Burlington*, 548 U.S. at 54. The Eighth Circuit, though still using the phrase "adverse employment action," has since recognized its pre-*Burlington*

8

decisions, which focused on a so-called "ultimate employment decision" standard, are no longer applicable in light of *Burlington*. *See AuBuchon v. Geithner*, 743 F.3d 638, 642 (8th Cir. 2014) (noting that Burlington overruled the Eighth Circuit's prior "restrictive approach to the [adverse employment action] phrase," which previously required an adverse action to require a " tangible change in duties or working conditions").

The only question here, then, is whether the fact that this case involves an ADA claim, rather than a Title VII claim (as was at issue in *Burlington*), somehow affects the overall calculus. This Court sees no reason why *Burlington* would not apply with equal force to an ADA claim. Appellate courts routinely address Title VII and ADA claims together, and several have, in fact, applied *Burlington* specifically to an ADA claim. *See McNeil v. The Salvation Army*, -- Fed.Appx. --, 2019 WL 980538 (7th Cir. 2019); *Ragusa v. Malverne Union Free Sch. Dist.*, 381 Fed.Appx. 85, 90 (2d Cir. 2010); *Grubic v. City of Waco*, 262 Fed.Appx. 665, 667 (5th Cir. 2008); *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 20 (1st Cir. 2006). To be sure, the Eighth Circuit has outright stated that "[r]etaliation claims under the ADA are analyzed identically to those brought under Title VII." *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999). And, in line with *Burlington*, the Eighth Circuit appears to have recently loosened the strict need for an "adverse *employment* action" by stating that only an "adverse action" is needed in order to satisfy the second element—again, in whatever context, employment or otherwise, so long as the adverse action would be materially adverse to a reasonable person. *See Hustvet*, 910 F.3d at 412; *Burlington*, 548 U.S. at 54.

Thus, the issue before this Court, as framed by *Burlington,* is whether defendant's actions—the imposition of allegedly unfair garnishments and the inappropriate reduction of welfare benefits—can be said to have been "materially adverse to a reasonable … applicant." *Burlington*, 548 U.S. at 54. At this early dismissal stage, the Court is satisfied that a reasonable applicant might find it materially adverse to have their entitlements wrongfully taken from them in response to their protected conduct; certainly such a withdrawal of financial benefits would tend to dissuade applicants from engaging in such conduct in the future. *Id*. at 54 (stating the question is ultimately whether an applicant or worker would be "dissuaded" from engaging in their protected conduct). In any event, the reasonableness standard is generally one to be weighed by a jury—not decided by a court at the dismissal stage. *Id*. at 55 (jury was reasonable to conclude a suspension without pay would deter a person's protected conduct). Accordingly, plaintiff's claim will be permitted to continue on the basis that he has sufficiently supported the second element at this stage.

That leaves defendant's brief suggestion that the adverse actions taken against plaintiff are too attenuated to establish a causal connection under the third element because they came "over a year after he filed a charge of discrimination." Temporal proximity between protected conduct and adverse action may be relevant for purposes of supporting or negating causation. *See, e.g., Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1184 (8th Cir. 2019); *Smith v. Allen Health Sys., Inc*., 302 F.3d 827, 832-833 (8th Cir. 2002). However, it is merely one factor in the total category of circumstantial evidence used to support a claim for retaliation—sufficient neither to create nor destroy a

genuine issue of fact in itself. *See Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 675 (8th Cir. 2006). Again, at this early dismissal stage, a loosely-supported argument about temporal proximity simply cannot carry the day for defendant. Plaintiff has done enough in his complaint to support a *prima facie* case for retaliation.

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss (#26) the first amended complaint is **GRANTED IN PART and DENIED IN PART**.

Defendant's motion is **GRANTED** as to plaintiff's failure-to-hire / failure-to-accommodate claim. That claim is hereby **DISMISSED**.

Defendant's motion is **DENIED** as to plaintiff's retaliation-based ADA claim.

So ordered this 5th day of March 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE